UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

BROADWAVE, LLC, a Florida limited liability corporation,

    *Plaintiff,*

v.

ITCSAT Corp, d/b/a SERVICE ATT, a Florida corporation; OCEAN BROADWAVE, INC., a Florida corporation

    *Defendants*.

CASE NO:

## COMPLAINT

Broadwave, LLC, through undersigned counsel, files this Complaint against ITCSAT Corp, d/b/a Service ATT and Ocean Broadwave, Inc., and states: [1]

## INTRODUCTION

1. This is an action for false and misleading advertising under the Lanham Act. The parties compete to provide the internet to high-end commercial buildings and multiple-dwelling units throughout South Florida. Defendants have gained an unfair market advantage through systematic misrepresentations and false advertisements to actual and prospective customers regarding the nature of their services.

2. Plaintiff Broadwave is a boutique internet provider that specializes in providing internet solutions to buildings in densely populated urban areas.

3. AT&T Internet Services ("AT&T") is the largest internet service provider in the United States.

---

[1] Plaintiff Broadwave, LLC, is "Broadwave" or "Plaintiff." Defendant ITCSAT Corp, d/b/a Service ATT is "ITC." Ocean Broadwave, Inc. is "Ocean Broadwave" or "OBI." ITC and OBI are collectively "Defendants."

4. Defendant ITC is a reseller of DirecTV satellite television services. ITC does not have the ability to directly provide any customers with internet. Instead, ITC resells internet to commercial and residential buildings that it purchases from subcontracted internet solution providers, not from AT&T.

5. ITC is not AT&T and is not an authorized AT&T internet provider. Yet, ITC advertises to its actual and prospective customers that it either *is* AT&T or has an affiliation with AT&T that allows it to provide AT&T internet. Those false representations are designed to make ITC appear more reputable and provide it an unfair competitive advantage.

6. ITC falsely advertises the nature of its internet 'services' at every juncture of its relationship with actual and prospective customers. ITC's misrepresentations include (a) telling building managers and tenants that it is AT&T; (b) using the email domain "@serviceatt.com" when communicating with actual and prospective customers; (c) operating under the fictious name "Service ATT"; and (d) requiring its agents to dress in blue shirts that bear AT&T's logo when sending them to the buildings it services.

7. As a result of its false and misleading advertisements, many of ITC's customers never know that they are not receiving AT&T internet, but instead, that of whatever subcontractor ITC has hired.

8. Defendant Ocean Broadwave *does* directly provide internet services. But, like ITC, Ocean Broadwave does not provide AT&T internet.

9. The inclusion of "Broadwave" in Ocean Broadwave's name is not happenstance. Ocean Broadwave was created by Stefano Gatto, a former Broadwave independent contractor who was terminated for stealing internet and redirecting it to buildings not serviced by Broadwave.

10. Ocean Broadwave falsely advertises to Broadwave's actual and prospective customers that *it is* Broadwave. This has allowed Ocean Broadwave to (a) illegally access the roofs of Broadwave's customers, bolstering its own network capabilities; (b) decrease Broadwave's capabilities by hijacking Broadwave's rooftop antennas and equipment; (c) surreptitiously redirect Broadwave's customers to it; and (d) take advantage of Broadwave's outstanding reputation and goodwill.

11. Taken alone, each Defendant's conduct violates the Lanham Act. But they are presently working together to further mislead the public and gain an unfair competitive advantage.

12. Because ITC does not actually provide any internet services (let alone AT&T internet), ITC is dependent on Ocean Broadwave to provide its internet services. Ocean Broadwave is well aware that the internet it provides on ITC's behalf is represented as AT&T internet coming from ITC.

13. In addition to having no affiliation with AT&T, Ocean Broadwave's network—i.e., the internet that ITC sells to its customers as AT&T internet—was procured and developed through Ocean Broadwave's deceit of Broadwave's customers.

14. Defendants' conduct has been to the detriment of Broadwave, other competitors, and the owners, management, and tenants of numerous commercial and residential buildings throughout South Florida.

15. Broadwave brings this action to recover damages stemming from Defendants' conduct to the fullest extent permitted by law and for an affirmative injunction requiring Defendants to engage in corrective advertising and make appropriate disclosures to their former, current, and prospective clients.

## PARTIES

16. Plaintiff Broadwave, LLC is a Florida limited liability company with its principal place of business located in Monroe County, Florida.

17. Defendant ITCSAT Corp d/b/a Service ATT is a Florida corporation with its principal place of business in Orange County, Florida.

18. Defendant Ocean Broadwave, Inc., is a Florida corporation with its principal place of business in Miami-Dade, Florida.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

20. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for claims so related to its Lanham Act claims that they form part of the same case or controversy.

21. This Court has personal jurisdiction over ITC because it is a for profit corporation with its principal place of business in Orange County, Florida, and continuously conducts business in Miami-Dade County, Florida.

22. This Court has personal jurisdiction over Ocean Broadwave because it is a for profit corporation with its principal place of business in Miami-Dade County, Florida, and continuously conducts business in Miami-Dade County, Florida

23. Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because Defendants are subject to personal jurisdiction in this District and because the acts giving rise to the claims herein occurred in this District.

## **GENERAL ALLEGATIONS**

a. **Internet Solutions Providers in the Urban Market**

24. Internet solutions providers develop the networks and supply the equipment—routers, antennas, servers, etc.—that allow data to be transmitted across the internet. Simply put, internet solutions providers allow the internet to function.

25. Much of the data that is transmitted across the internet is sent via radio waves. In metropolitan areas, high-rise buildings interfere with those radio waves, reducing the internet quality for the end-user. Internet solutions providers create networks using rooftop antennas to bolster the interconnectivity—and thus quality—of internet.

26. This means that rooftop access is at a premium in areas such as Brickell, Downtown Miami, and Downtown Fort Lauderdale.[2]

27. Commercial buildings and multiple-dwelling units ("MDUs") often negotiate with internet solutions providers to provide internet throughout an entire building. Building tenants often receive a bill from their building rather than form the internet service provider.

28. In connection with these deals, buildings grant internet solutions providers roof access and the option to install antennas that can be used to increase the provider's capabilities in the area.

b. **ITC: A Business Model Predicated on Deception**

29. ITC holds itself out as a provider of both DirecTV and internet services. In reality, ITC does not have the capabilities, employees, or knowledge to provide internet, beyond routine

---

[2] Some types of internet networks are more dependent on roof access than others. For example, wireless fiber internet, a type of high-speed internet offered by Broadwave, is dependent upon a direct line of sight between one roof and another.

router maintenance. ITC subcontracts out its services to internet solutions providers to develop and maintain its networks.

30. ITC negotiates with most building managers under the pretense that it directly provides AT&T internet services. For example, ITC recently approached representatives of the Wells Fargo Center[3] and falsely advertised that it provides AT&T internet. In reality, the internet that it is selling is Ocean Broadwave's, not AT&T's.

31. The deception does not stop with negotiations: When the tenants or managers of existing customers call for service, ITC employees answer the phone and identify themselves as "Service ATT." When tenants or managers email about internet issues, they are responded to from an ITC email domain of "@serviceATT".[4]

32. ITC representatives have entered countless homes and offices dressed as AT&T employees. For example, ITC representatives, dressed in blue shirts bearing the AT&T logo and holding themselves out to be AT&T, entered the homes of residents at the 1100 Millecento condominium building.[5]

33. These shirts were created by and provided to ITC agents by ITC's principal, Leonidas Sitaras. Their purpose is plain: To continue to falsely advertise ITC as being AT&T and providing AT&T internet.

34. At no point did AT&T grant ITC authority to hold itself out as AT&T.

35. At no point were the customers or tenants apprised by ITC that the technicians in their homes and offices had no affiliation with AT&T internet.

---

[3] Located at 33 SE 2nd Avenue, Miami, Florida 3313.
[4] Often, individual tenants do not see a bill for internet beyond a monthly charge from their building.
[5] Located at 1100 South Miami Avenue, Miami, Florida 33130.

36. The false and misleading nature of ITC's conduct has already prompted at least one former customer to sue it for fraud and violation of the Florida Deceptive and Unfair Trade Practices Act. *See Marquis Miami Condominium Association Inc. v. ITCSAT Corp d/b/a Service ATT, et al*, Case No. 2020-013829-CA-01 (Fla. 11th Jud. Cir. 2020).

    c. **Ocean Broadwave: Named to Deceive**

37. Ocean Broadwave is an internet solutions provider. Ocean Broadwave has no affiliation with AT&T internet or with Plaintiff.

38. From its inception, the purpose of Ocean Broadwave's was to mislead consumers into thinking that it was affiliated with Broadwave. Ocean Broadwave's goal was simple: illegally access the rooftops of Broadwave's customers to bolster its own network and divert Broadwave's customers.

39. OBI has achieved this goal. It repeatedly approached Broadwave's existing customers and falsely advertised that it is, in fact, Broadwave. This has happened at numerous locations, including the Continuum on South Beach[6] and the Pelican Hotel.[7] In both instances, OBI was afforded rooftop access under the pretense that it was Broadwave.

40. After being granted rooftop access, OBI immediately (a) replaced Broadwave and began directly providing services at those locations and (b) redirected Broadwave's antennas to provide internet services to OBI and ITC customers in the nearby vicinity.

    d. **Defendants Conspired to Cut Broadwave out of the Market and Unfairly Increase Their Own Market Share**

41. Defendants rely on one another to mislead customers.

---

[6] Located at 100 South Pointe Drive, Miami Beach, Florida, 33139.
[7] Located at 826 Ocean Drive, Miami Beach, Florida, 33139.

42. ITC needs Ocean Broadwave to install and maintain a network, as it does not have the ability to do so. Ocean Broadwave needs ITC to provide it with rooftop access to various buildings that ITC has acquired through its misrepresentations of the nature and quality of its services.

43. Ocean Broadwave is well aware that ITC is falsely holding itself out as providing AT&T internet.

44. ITC, which had a prior business relationship with Plaintiff, is well aware that Ocean Broadwave is in no way affiliated with Plaintiff and that Ocean Broadwave has intentionally misrepresented its affiliation with Plaintiff in order to gain access to various rooftops across South Florida.

45. At a minimum, ITC and Ocean Broadwave have jointly approached the Plaza Brickell[8] and Las Olas Grand[9] and encouraged them to stop doing business with Broadwave and instead receive internet through Defendants.

## COUNT I
## FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)
**(as to Defendant ITC)**

46. Plaintiff repeats and realleges paragraphs 1-7, 11, 13-17, 19-21, and 23-36 as if fully set forth herein.

47. Plaintiff competes with ITC in the internet solutions provider industry.

48. ITC engages in interstate commerce through its involvement in the internet solutions provider market.

---

[8] Located at 950 Brickell Bay Drive, Miami, Florida 33131.
[9] Located at 411 North New River Drive, Fort Lauderdale Florida, 33301.

49. ITC has made misleading factual representations and advertisements in interstate commerce, and the false and misleading representations affect interstate commerce.

50. ITC has made false and misleading representations and advertisements via, at least, email, telephone, in-person, bids or proposals, agreements, and statements of work.

51. In these advertisements and promotions, ITC holds itself out to its actual and prospective customers as affiliated with AT&T. Such representations are false.

52. In these advertisements and promotions, ITC holds itself out to its actual and prospective customers as directly providing internet. Such representations are false.

53. ITC intentionally and deceptively misrepresents the nature of internet services it provides. This allows ITC to appear to be a reputable internet service provider when it is not, gain business when it otherwise would not, and gain valuable roof access at the expense of legitimate market competitors.

54. At the very least, ITC's misrepresentations are likely to mislead, confuse, or deceive actual and prospective customers.

55. ITC made and continues to make these representations with the intent to mislead its customers and the public.

56. ITC knew that these representations were false and misleading.

57. ITC's false and misleading representations have deceived and confused its customers and have the capacity to continue to deceive its customers and prospective customers.

58. ITC's misrepresentations are sufficiently disseminated to actual and prospective customers seeking internet services so as to constitute advertising.

59. Customers would not do business with ITC if they were aware that, despite its representations to the contrary, ITC intentionally misrepresents its affiliation with AT&T and

internet service capabilities. At least one entity, upon learning of ITC's conduct, has refused to continue working with ITC.

60. ITC's false and misleading representations have had a negative material effect on Plaintiff's business and the business of other competitors.

61. As of the time this lawsuit is filed, ITC continues to misrepresent its affiliation with AT&T and its service capabilities.

62. As a result of ITC's conduct, Plaintiff, other competitors, and the public have been and will continue to be damaged in an amount to be determined at trial.

**COUNT II**
**FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)**
**(as to Defendant Ocean Broadwave)**

63. Plaintiff repeats and realleges paragraphs 1-3, 8-11, 13-16, 18-20, 22-28, and 37-40 as if fully set forth herein.

64. Plaintiff directly competes with OBI in the internet solutions provider industry.

65. OBI engages in interstate commerce through its involvement in the internet solutions provider market.

66. OBI has made misleading factual representations and advertisements in interstate commerce, and the false and misleading representations affect interstate commerce.

67. OBI has made false and misleading representations and advertisements via, at least, email, telephone, in-person, bids or proposals, agreements, and statements of work.

68. In these advertisements and promotions, OBI holds itself out to its actual and prospective customers as being affiliated with Plaintiff. Such representations are false.

69. OBI intentionally and deceptively misrepresents its affiliation with Plaintiff. This allows OBI to appear to be a reputable internet service provider when it is not, gain business when it would not, and gain unwarranted and illegal access to the roofs of Broadwave's customers.

70. At the very least, OBI's misrepresentations are likely to mislead, confuse, or deceive actual and prospective customers.

71. OBI made and continues to make these representations with the intent to mislead its customers and the public.

72. OBI knew that these representations were false and misleading.

73. OBI's false and misleading representations have deceived and confused its customers and have the capacity to continue to deceive its actual and prospective customers.

74. OBI'S misrepresentations are sufficiently disseminated to actual and prospective customers seeking internet services so as to constitute advertising.

75. Customers would not do business with OBI if they were aware that, despite its representations the contrary, OBI intentionally misrepresents its affiliation with Broadwave.

76. OBI's false and misleading representations have had a negative material effect on Plaintiff's business and the business of other competitors.

77. As of the time this lawsuit is filed, OBI continues to misrepresent its affiliation with Broadwave

78. As a result of OBI's conduct, Plaintiff, other competitors, and the public have been and will continue to be damaged in an amount to be determined at trial.

## COUNT III
## TORTIOUS INTERFERENCE
**(as to both Defendants)**

79. Plaintiff repeats and realleges paragraphs 1-45 as if fully set forth herein.

80. Defendants have interfered with a number of Plaintiff's advantageous business relationships. Specifically:

   a. OBI's network—which ITC provides to its customers—relies on Plaintiff's equipment and rooftop access that was obtained by misrepresentations to Plaintiff's customers.

   b. ITC is selling OBI's network—which it knows was obtained through OBI's misrepresentation of its affiliation with Plaintiff—to, among others, Plaintiff's customers.

   c. Defendants have jointly approached various customers of Plaintiff and solicited and otherwise encouraged them to stop doing business with Plaintiff.

81. At a minimum, Defendants have interfered with Plaintiff's relationships at: The Plaza on Brickell, the Las Olas Brand Condominiums, Las Olas River House Condominiums, Bella Mare Condominiums, Continuum South Condominiums, and the Marriott Dadeland Hotel.

82. Defendants knew of the existence of Plaintiff's relationships with all of these buildings.

83. Defendants interference with those relationships was intentional and unjustified.

84. As a direct and proximate result of Defendants' conduct, Broadwave has suffered significant damages in an amount to be proven at trial.

## COUNT IV
## CIVIL CONSPIRACY
**(as to both Defendants)**

85. Plaintiff repeats and realleges paragraphs 1-45 as if fully set forth herein.

86. ITC and OBI are engaged with one another to deceive Plaintiff's actual and prospective customers and interfere with Plaintiff's advantageous relationships.

87. Defendants' have each taken overt steps to that end. Specifically:

   a. At ITC's behest, OBI provides internet to ITC's customers under the pretense that the internet provided is from AT&T. Both Defendants' know this is false and are engaged in such conduct to mislead actual and prospective customers about the nature of their services and to gain an unfair foothold in the market.

   b. ITC provides its agents and the agents of OBI with uniforms designed to mislead customers into thinking they are AT&T employees.

   c. ITC advertises that OBI's network is actually its own network.

   d. ITC markets and sells OBI's network, which it knows was obtained through OBI's misrepresentation of its affiliation with Broadwave.

   e. Both Defendants are aware that OBI's network—of which ITC is the primary seller—relies on Broadwave's equipment that has been repurposed and redirected for the sole benefit of Defendants without authorization for same.

88. OBI and ITC have reduced Broadwave's market share through their conspiracy.

89. At a minimum, Defendants have interfered with Plaintiff's relationships at: The Plaza on Brickell, the Las Olas Brand Condominiums, Las Olas River House Condominiums, Bella Mare Condominiums, Continuum South Condominiums, and the Marriott Dadeland Hotel.

90. Defendants knew of the existence of Broadwave's relationships with these buildings and intentionally and unjustifiably interfered with them through their conspiracy.

91. As a direct and proximate result of Defendants' conduct, Broadwave has suffered significant damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the following relief:

(1) Damages from ITC to the fullest extent permitted by law under the Lanham Act;

(2) Corrective advertising under the Lanham Act as to ITC;

(3) Damages from OBI to the fullest extent permitted by law under the Lanham Act.

(4) Corrective advertising under the Lanham Act as to OBI;

(5) Compensatory damages suffered as a result of Defendants' tortious interference;

(6) Compensatory damages suffered as result of Defendants' conspiracy;

(7) Punitive damages as a result of Defendants' tortious interference;

(8) Punitive damages as a result of Defendants' conspiracy;

(9) Pre-judgment and post-judgment interest;

(10) An award of attorneys' fees and costs of the action; and

(11) Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims.

Dated: October 15, 2020

Respectfully submitted,

By: *s/ Jonathan E. Pollard*
**Jonathan E. Pollard**
Florida Bar No.: 83613
jpollard@pollardllc.com

 **Christopher S. Prater**
Florida Bar No.: 105488
cprater@pollardllc.com

**Michael A. Boehringer**
Florida Bar No.: 1018486
mboehringer@pollardllc.com

**POLLARD PLLC**
100 SE 3rd Ave., Ste. 601
Fort Lauderdale, FL 33394
Telephone: 954-332-2380
Facsimile: 866-594-5731
*Attorneys for Plaintiff*
*Broadwave, LLC*